IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEGUROS POPULAR, C. x A.,
f/k/a  SEGUROS UNIVERSAL-AMERICA,
C. x A.,

                    Plaintiff,

                    vs.                              Case No.05-1002-JTM

RAYTHEON AIRCRAFT CO.,

                    Defendant.

MEMORANDUM AND ORDER

      Plaintiff Seguros Popular has filed the present action, on January 4, 2005, alleging that a

Raytheon Premier aircraft, which crashed January 7, 2003, was defective.  The claims advanced

include breach of express warranty, negligent design and negligent manufacture.  Defendant

Raytheon Aircraft has moved to dismiss, arguing that the plaintiff's product liability claims should

be dismissed under the two-year statute of limitations of KSA 60-3301, since defendant was not

served until May 2, 2005.  Seguros Popular has also moved to either strike certain portions of

Raytheon's reply or for leave to file a surreply.

      Raytheon argues that Kansas limitations law applies because the present matter is a diversity

action, and the defendant does not dispute the matter.  There remains, however, a question as to

whether the controlling Kansas statute is the two-year limitations period generally applying to tort

claims, or the four-year limitations period found in the Kansas UCC.  See KSA 84-2-725(1), ("action

for breach of any contract for sale must be commenced within four years after the cause of action has occurred").

In Raytheon's initial motion, it argues that the two-year period applies, and that the present action is accordingly time-barred. KSA 60-513 provides for a two-year statute of limitations for actions sounding in tort. KSA 60-3303(c) provides that product liability actions are generally governed by § 60-513.

KSA 60-203(a) provides that "a civil action is commenced when the petition is filed, if service of process is obtained within 90 days after the petition is filed (120 days if extended by the court upon a showing of good cause); otherwise, the action is commenced when service of process is obtained." Raytheon stresses that the action cannot be extended under this provision since there was no request for extension within 90 days of the complaint under 60-203(a), and no attempted service under § 60-203(b).

In response to Raytheon's motion, Seguros Popular argued alternatively that the four-year limitations period of the UCC applies, or that the action in any event should not be dismissed since, according to defendant, the shorter time period authorized by Kansas law has been preempted by Fed.R.Civ.Pr. 4(m), which provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

The latter argument is without merit; if a two-year limitations period applies, the present action must be dismissed. Although Rule 4(m) alleviates some of the effects of shorter state

2

extensions for limitations periods, it does so only in cases presenting federal claims.  The authority cited by defendant in *Henderson v. United States*, 517 U.S. 654 (1996), dealt with such a federal claim, and the Supreme Court expressly noted that in actions based on state law, Rule 4(m) would not alter the existing principle that "a plaintiff must serve process before the statute of limitations has run, if state law so requires for a similar state-court suit."  *Henderson*, 517 U.S. at 657.

The issue thus becomes which statute of limitations should control.  In *Winchester v. Lester's of Minnesota, Inc.*, 983 F.2d 992 (10th Cir. 1993), plaintiff hog farmers brought an action claiming that a defective ventilation system had killed or damaged their hogs, and creating additional damages in veterinary bills and repair costs.  The Tenth Circuit held the action was essentially contractual in nature, and hence the statute of limitations in the UCC governed the case.  The court acknowledged the general principle set forth in *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192, 200-201 (1983) that tort standards will apply when a breach of warranty causes death, personal injury, or damage to property.

However, the *Winchester* court warned against facile constructions of a claim as either physical damages or economic loss:

> [D]etermining the proper statute of limitations for plaintiffs' breach of warranty claims turns on whether they have alleged physical damage to property from a dangerous product or simple economic loss from a defective one....  This court, interpreting Kansas law, has held that "an action for damages from a product's qualitative defects alone without proof of the product's dangerousness cannot sound in tort." *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581 (10th Cir.1984).

> In *Daitom* we went further, characterizing a strict physical damages/economic loss construct as unworkable, stating:

> > [T]he line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose.  These factors bear directly

> on whether the safety-insurance policy of tort law or the
> expectation-bargain protection policy of warranty law is most
> applicable to a particular claim.

741 F.2d at 1582 (*quoting Pennsylvania Glass Sand Corp. v. Caterpillar Tractor
Co.*, 652 F.2d 1165, 1173 (3d Cir.1981)).  Consideration of the nature of the defect,
the type of risk, and the manner of injury in this case would lead to the conclusion
that the expectation-bargain protection policy of warranty law is more applicable to
the loss before us than the safety-insurance policy of the tort law. *See East River
Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295,
2302, 90 L.Ed.2d 865 (1986) (injury to the defective product itself is an economic
loss not recoverable in tort).

983 F.2d at 995-996.

The *Winchester* court thus expressly notes the general rule that, where the defective product

merely damages, the claim is for breach of warranty rather than tort.  But this is qualified by the

court's reiteration of the principles identified in *Daitom*, which provides a limited exception to the

general rule based on an analysis of the type of defect and type of risk.  Before *Daitom*, this court

had allowed  a tort claim for damage to the defective product itself — a defective chassis in a

concrete truck — where the defective product was "unreasonably dangerous." *Fordyce Concrete,

Inc. v. Mack Trucks, Inc.*, 535 F.Supp. 118, 119 (D. Kan. 1982).  The *Fordyce* court concluded: "We

believe that the Kansas Supreme Court, if faced with the question before us, would once again

follow the explicit language of [Restatement (Second) of Torts] § 402A and allow plaintiff to recover

for physical damage to property resulting from an unreasonably dangerous defective product

regardless of whether the damage is inflicted upon the defective product or upon other property."

Two years later, the Tenth Circuit expressly approved this principle, acknowledging that

*Fordyce* "held that plaintiff could recover for physical damage to property resulting from an

unreasonably dangerous defective product, irrespective of whether the damage was inflicted upon

the defective product itself or upon other property." *Daitom,* 741 F.2d at 1581.  Thus, a limited

exception to the general rule exists, an exception which has as its "prerequisite and touchstone to

recovery in tort" the existence of unreasonable dangerousness.  *Id.  Cf. Nature's Share, Inc., v.*

*Kutter Products*, 752 F.Supp. 371, 381 (D. Kan. 1990) (holding that claim for insect-infested bird

feeders was not a tort claim under the *Daitom* analysis, since defect was not an unreasonable danger

to persons or property, and was "not the type of sudden and hazardous injury associated with tort

actions").

Applying this analysis here, the court finds that the actions denominated as breach of

warranty actually sound in tort, and hence must comply with Kansas limitations law governing such

claims.  Here, plaintiff alleges much more than a poorly designed and hence inoperable aircraft.  It

alleges that the defective design and manufacture caused "[t]he crash and total loss of the Aircraft."

(Complaint, at 2).  Inescapably, the present case revolves around not simply a *defective* product, but

a *dangerous* one.

This is not a case involving defective hog-farm ventilation (*Winchester v. Lester's of*

*Minnesota, Inc.*, 983 F.2d at 992), defective bird feeders (*Nature's Share*, 752 F.Supp. at 381), a

defective wood-finishing system in plaintiff's factory (*Mid Continent Cabinetry, Inc. v. George Koch*

*Sons, Inc.*, No. 87-1248-C, 1991 WL 151074, *17 (D.Kan. 1991), a defective engine in an alfalfa

mill (*Power Application & Mfg. v Moscow Agri-Industries*, No. 86-1656-PFK, 1992 WL 363684,

*5 (D. Kan. Nov. 10, 1992), or even an aircraft which requires so much repair that it acquires the

reputation as a "'hangar queen.'"  (*CAT Aircraft Leasing, v. Cessna Aircraft Co.*, 87-1022-C, 1990

WL 171010, *1 (D. Kan. Oct. 3, 1990).  A airplane that is so defective so that it falls out of the sky

can only be considered unreasonably dangerous as that term is understood in the context of

traditional tort law.  Because the defect created a danger of sudden and imminent hazard to human life, and is alleged to have in fact led to the actual crash of an aircraft, the present action sounds in tort, and was required to comply with Kansas law governing such claims.

In its reply, defendant Raytheon advanced the argument that, even if the UCC statute of limitations applied, dismissal was still warranted, since the parties here had contracted for an even shorter (one year) limitations period, as permitted under KSA 84-2-725(1).  This argument prompted the motion to strike or for leave to file a surreply.  Seguros Popular argues that this was outside the scope of the original motion, and considers facts which are outside the scope of the existing pleadings.  Raytheon argues that it was simply responding to plaintiff's argument about the UCC statute of limitations.  In light of the court's finding that the tort statute of limitations governs the action, there is no need to strike any element of the reply and no need for additional argument in the form of a surreply.

IT IS ACCORDINGLY ORDERED this 30th day of August, 2005, that the defendant's Motion to Dismiss (Dkt. No. 10) is granted; plaintiff's Motion to Strike or for Leave (Dkt. No. 23) is denied.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

6